UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE ANN R.,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 5:23-cv-11491
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 18), and REMAND THIS MATTER TO THE COMMISSIONER OF SOCIAL SECURITY

**I.     RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 16), **DENY** Defendant's motion for summary judgment (ECF No. 18), and **REMAND** this matter to the Commissioner of Social Security for action consistent with this report.

**II.    REPORT**

Julie Ann R. ("JAR") brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 16), the Commissioner's cross-motion for summary judgment (ECF No. 18), Plaintiff's reply (ECF No. 19), and the administrative record (ECF No. 6).

A.     **Background and Administrative History**

In 2019, JAR applied for disability insurance (DI) benefits, alleging disability beginning April 18, 2018, at the age of 51.  (ECF No. 6, PageID.204-210.)  In her disability report, she lists two conditions (major depressive disorder and generalized anxiety disorder with panic attacks) as limiting her ability to work.  (*Id.*, PageID.239.)

Plaintiff's application was denied at the initial level in July 2019, with specific reference to:  (1) Mohammad Jafferany, M.D.'s report received May 22, 2019; (2) Covenant Healthcare's report received May 22, 2019; and, (3) MidMichigan Health Freeland Family Practice's report received June 11, 2019.  (ECF No. 6, PageID.67-88; *see also* ECF No. 6, PageID.318-405 [Exhibits 1F-3F].)

In August 2019, JAR sought a hearing with an ALJ. (*Id.*, PageID.91-92.) By the time of the hearing, the medical evidence had grown to include records dated July 11, 2019 to May 18, 2022. (*Id.*, PageID.16-17. 51, 406-685 [Exhibits 4F-9F].) On June 23, 2022, ALJ Andrew Sloss conducted a hearing, at which the claimant, her attorney, and a VE (Heather Benton) appeared (*id.*, PageID.49-66). On July 5, 2022, ALJ Sloss issued an unfavorable decision, determining that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, PageID.31-48.)

JAR requested review (*id.*, PageID.201-203); however, on May 15, 2023, the Appeals Council (AC) denied the request for review (*id.*, PageID.18-23). Thus, ALJ Sloss's decision became the Commissioner's final decision. Plaintiff timely commenced this action on June 23, 2023. (ECF No. 1.)

  **B.** **Plaintiff's Medical History**

The administrative record contains approximately 368 pages of medical records, seemingly dated April 2017 to May 2022. (ECF No. 6, PageID.318-685 [Exhibits 1F-9F]). Exhibits 1F to 9F were available to the ALJ at the time of his July 5, 2022 decision (*see id.*, PageID.44, 48), and these records will be discussed in detail, as necessary, below.

### C.   The July 5, 2022 Administrative Decision

Pursuant to 20 C.F.R. § 404.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 18, 2018, the alleged onset date (AOD). (ECF No. 6, PageID.37.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, and panic disorder. (*Id.*, PageID.37.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*, PageID.37-39.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple instructions [*i.e., understanding and memory limitations and/or sustained concentration and persistence limitations*] in work that has only occasional changes in the work setting [*i.e., adaptation limitations*], and that involves only occasional interaction with others [*i.e., social interaction limitations*].

(*Id.*, PageID.39-42.)  At **Step 4**, the ALJ determined that Plaintiff was capable of performing past relevant work as a salvage laborer, as it did not require the

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

performance of work-related activities precluded by Plaintiff's RFC. (*Id.*, PageID.42-43.) Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 18, 2018, through the date of the decision. (*Id.*, PageID.43.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

5

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.   Analysis

Plaintiff challenges the ALJ's mental RFC determination – *i.e.*, "she can understand, remember, and carry out simple instructions in work that has only occasional changes in the work setting, and that involves only occasional interaction with others[,]" (ECF No. 6, PageID.39) – contending the ALJ "provides

6

no real analysis as to how he reached that conclusion . . . [,]" nor does he "explain[] why he did not adopt the additional restrictions regarding time off task[], absenteeism[,] or the ability to maintain focus over an eight hour work day." (ECF No. 16, PageID.747.) More specifically, Plaintiff presents two challenges to the ALJ's review of the evidence of record and two challenges to the ALJ's review of the opinion evidence. (ECF No. 16, PageID.747-761.)

### 1. Medical evidence of record (MER)

At Step III, the ALJ found that Plaintiff had either mild or moderate limitations in each of the four functional areas, in each case concluding: "the claimant's treatment for mental impairments during the period under adjudication was generally conservative and routine." (ECF No. 6, PageID.38.) Then, within the RFC discussion, ALJ Sloss stated that "[t]he evidence of record *supports* a finding that the claimant's mental impairments cause moderate social, cognitive, and adaptive limitations as reflected in the above residual functional capacity." (ECF No. 6, PageID.40-41 (emphasis added).) He explained:

> During treatment, the claimant *consistently* showed signs of depressed and anxious moods with episodes of flat affect, tearfulness, hopeless/helpless attitude, poor insight or judgment, and indicia of panic attacks; however, she also *consistently* appeared grossly mentally normal and stable, showing no signs of acute behavioral problems, communication deficits, loss of orientation, impaired thought processes or processing speed, active suicidal ideation, or psychosis (1F, 7, 13, 18, 24, 27, 31; 2F, 5; 3F, 2, 5, 8, 11, 14, 18, 21; 5F, 5-6, 11-12, 23-24, 29-30; 6F, 4, 10, 19; 7F, 31, 41, 47; 8F, 11-12, 19-20, 27-28, 35-36, 74-75).

(ECF No. 6, PageID.40 (emphases added) (citing ECF No. 6, PageID.324, 330, 335, 341, 344, 348 [Ex. 1F], 370 [Ex. 2F], 383, 386, 389, 392, 395, 399, 402 [Ex. 3F], 417-418, 423-424, 435-436, 441-442 [Ex. 5F], 501, 507, 516 [Ex. 6F], 580, 590, 596 [Ex. 7F], 612-613, 620-621, 628-629, 636-637, 675-676 [Ex. 8F]).)

### a. Chain citation (28 records)

Plaintiff's first challenge to the ALJ's review of the MER concerns the chain citation. (ECF No. 16, PageID.748-752.) The ALJ's lengthy citation references MER from MidMichigan Health Freeland Family Practice (Ex. 1F, Ex. 6F), Covenant Healthcare (Ex. 2F), and Great Lakes Bay Health Centers (Ex. 7F), as well as fifteen mental status examination (MSE) forms from the offices of Dr. Jafferany / CMU Health Behavioral Medicine (Exhibits 3F, 5F, and 8F). Plaintiff asserts the ALJ "does not specifically cite any finding from the medical evidence, but instead merely provides a chain of medical exhibit pages which he alleges supports his conclusions." (ECF No. 16, PageID.748.)

Plaintiff contends that "[a] review of the actual findings within those medical exhibit pages does not support the ALJ's holding that [JAR] is mentally normal and stable, and would not require additional restrictions[,]" (*id*.), for which she provides approximately twenty (20) citations to records, each with explanation. (ECF No. 16, PageID.748-751.) In Plaintiff's view, the "list of cites" does not constitute substantial evidence that her mental health was "normal and stable"

8

when "the actual findings in that chain of cites contradict[] the ALJ's findings." (ECF No. 16, PageID.751-752.)

In response to Plaintiff's "litany of medical reports that allegedly substantiate her position . . . [,]" the Commissioner asserts that "a review of the evidence Plaintiff references shows many findings that support the ALJ's decision[,]" which the Commissioner supports with multiple citations to records within the aforementioned chain cite, accompanied by explanations, as well as citations to:

- Therapist Roznowski's July 25, 2019 notes (ECF No. 6, PageID.674);

- Jafferany Psychiatric Services, PLC's August 5, 2021 notes (*id.*, PageID.439);

- May 17, 2022 psychiatry progress note from Dr. Jafferany (*id.*, PageID.415-416);

- a September 10, 2018 progress note from Rodames Dedicatoria, M.D. of MidMichigan Health (*id.*, PageID.318); and,

- an October 2018 progress note from Trisha Taylor, N.P. of Ali Ibrahim, M.D.'s office (*id.*, PageID.368).

(*See* ECF No. 18, PageID.772-776.) The Commissioner then addresses Plaintiff's contention that the therapist's normal MSEs were "contrary to the findings, diagnoses, assessments, and medication changes from Ms. Roznowski . . . [,]" taking the position that, to the extent Plaintiff suggests "the normal mental status

9

examination findings were inaccurate," it is "purely her speculation and is not evidence." (*Id*., PageID.776-778.) Moreover, the Commissioner asserts that Plaintiff's diagnoses "do not even establish a severe impairment, let alone establish greater mental restrictions[,]" and that "the fact . . . Plaintiff was taking medication for her mental impairments, even if the dosages were adjusted, does not establish disabling limitations." (*Id*., PageID.777.)

Setting aside, for the moment, the debate over whether Plaintiff's MSE forms are accurate or consistent with the provider's progress notes, the ALJ's chain citation to 28 records leaves the subsequent reviewer in the position of determining which record supports which conclusion. (*See* ECF No. 6, PageID.40.) Notwithstanding the parties' above-discussed debate about whether the cited evidence supports the ALJ's conclusion, this Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011); *see also Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (requiring an appellate record that would "permit meaningful review" of the ALJ's application of the rules). The Undersigned finds that a remand is needed to obtain a more specific and reviewable analysis.

10

Moreover, as will be seen below, Plaintiff raises a legitimate concern about the ALJ's substantial reliance on 15 MSEs.

### b. Psychosis (auditory and visual hallucinations)[2]

Plaintiff's second challenge to the ALJ's treatment of the MER concerns evidence of psychosis. By way of background, after the above-mentioned chain citation, the ALJ continued his review of the evidence of record by observing:

> Although the claimant reported experiencing psychosis (auditory and visual hallucinations) on a daily basis ([ECF No. 6, PageID.509]), there is *scant* mention of these symptoms in the treatment notes, and the *mental status* exam findings do not document indicia of psychosis (e.g., responding to internal stimuli) to support these allegations. Moreover, her PHQ-9 and GAD-7 scores were generally within the mild-to-moderate range of self-reported psychological symptoms ([*id.*, PageID.324, 335, 341, 592, 598]). The claimant's psychological symptoms were treated conservatively with outpatient psychotherapy and psychotropic medications ([*id.*, PageID.323, 370, 385, 494, 550-601]). The claimant did not require any emergency or inpatient psychiatric treatment for psychological symptoms during the period under adjudication. Although the claimant reported experiencing multiple side effects from medications, these side effects were not well documented or supported in the clinical records.

(ECF No. 6, PageID.40-41 (emphases added).)

---

[2] At Step 3, when concluding that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace, the ALJ stated, *inter alia*: "the claimant often appeared grossly psychologically unremarkable and did not *consistently* show marked problems with concentration, processing speed, or thought processes, or evidence of psychosis." (ECF No. 6, PageID.38 (emphasis added).)

11

To be clear, Plaintiff has not challenged the ALJ's consideration of her subjective symptoms based on 20 C.F.R. § 404.1529, SSR 16-3p. Instead, Plaintiff contends the ALJ's "holding and rationale does not *accurately* reflect the medical findings of record." (ECF No. 16, PageID.758 (emphasis added).)

> i. Whether there is scant mention of psychosis (hallucinations) in the treatment notes?

Plaintiff argues that, "[c]ontrary to the ALJ's finding of *scant* mention of hallucinations or psychosis, the Plaintiff's symptoms are well documented in the medical record[,]" in support of which she cites progress notes from CMU Health (*see* ECF No. 6, PageID.673, 622, 649, 638, 626, 630, 610, 614 [Ex. 8F]), as well as the August 5, 2021 records from Jafferany Psychiatric Service, PLC (*id.*, PageID.439, 443 [Ex. 5F]). (ECF No. 16, PageID.758-759 (emphasis added).)

In response to Plaintiff's citation to "six instances where she reported hallucinations to her providers . . . [,]" the Commissioner contends these "were the only referenced reports during a 52-month relevant period (April 2018 to July 2022)." (ECF No. 18, PageID.788-789.) The record contains several records where Plaintiff was negative for or denied hallucinations (*see* ECF No. 6, PageID.321, 368, 368, 370, 409, 580, 589) or where she reported "a slight decrease in her visual hallucinations[,]" (*id.*, PageID.617); yet, there were visits where Plaintiff reported hallucinations (*see* ECF No. 6, PageID.509, 673), and there are several notes that assess "increased depression and hallucinations, anxiety," (ECF

12

No. 6, PageID.437, 443, 614, 622, 630, 638), or "[a]uditory hallucinations," (*id.*, PageID.512).

The Commissioner notes that, in half of the cases where she "was assessed with increased hallucinations[,]" her providers "found no abnormal thought content, including no hallucinations . . . [,]" (ECF No. 18, PageID.789), in support of which the Commissioner cites the July 2021, June 2021, and May 2021 MSE forms (ECF No. 6, PageID.612, 620, 628).  The Commissioner then points to "multiple medical reports where her provider found normal or no abnormal thought content or she denied or there was no indication of hallucinations[,]" (ECF No. 18, PageID.789); here, the Commissioner also relies upon multiple MSE forms (ECF No. 6, PageID.383, 386, 389, 392, 395, 418, 424, 636), in addition to records from MidMichigan Health Freeland Family Practice (*id.*, PageID.318, 330, 335 [Ex. 1F], 501, 507, 516 [Ex. 6F]) and Covenant Healthcare (*id.*, PageID.368, 370 [Ex. 2F]).

To the extent Plaintiff is looking for the Court to re-weigh the evidence, the Court's "'task is not to reweigh the evidence.  That is solely the province of the Secretary.'"  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)).

        ii.    **Whether the mental status exam (MSE) findings document indicia of psychosis?**

Plaintiff also contends the ALJ's "near total reliance on a few checkmark mental status exam forms does not constitute substantial evidence of record." (*Id.*,

13

PageID.759.)  To be sure, the ALJ's chain citation includes references to <u>fifteen</u> mental status exams, and the administrative record also contains <u>one</u> medical source statement (MSS).  These are listed here chronological order:

- <u>Six (6) by Gladys Kimell, FNP-C</u>:  November 9, 2018 (ECF No. 6, PageID.399), December 6, 2018 (*id.*, PageID.395), January 8, 2019 (*id.*, PageID.392), February 19, 2019 (*id.*, PageID.389); March 20, 2019 (*id.*, PageID.386), and May 16, 2019 (*id.*, PageID.383);

- <u>One (1) by treating mental health therapist Kristi Roznowski, LMSW</u>:  July 25, 2019 (*id.*, PageID.675-676);

- <u>Four (4) by Amber Fritzler, NP-C</u>:  April 9, 2021 (*id.*, PageID.636-637), May 7, 2021 (*id.*, PageID.628-629), June 4, 2021 (*id.*, PageID.620-621), and July 9, 2021 (*id.*, PageID.612-613);

- <u>One (1) by therapist Roznowski</u>:  August 3, 2021 (*id.*, PageID.606-608);

- <u>Three (3) by Amber Fritzler, NP-C</u>:  August 5, 2021 (*id.*, PageID.441-442), October 7, 2021 (*id.*, PageID.435-436), and December 28, 2021 (*id.*, PageID.423-424); and,

- <u>One (1) by Mohammad Jafferany, M.D.</u>:  May 17, 2022 (*id.*, PageID.417-419).

Having already conceded "the ALJ's point that the therapist at Dr. Jafferany's office did a horrible job of completing the checkmarked mental status exams for those video visits which note that everything is always normal[,]" (*id.*, PageID.750), Plaintiff contends "those forms" are "completely inconsistent" with "the therapist's notes for those exams[,]" and further contends the forms are

14

"inconsistent" with "the diagnoses . . . on those dates" and "the medication increases and changes on those dates that reflect a worsening of her condition consistent with the office notes from those exams." (*Id.*, PageID.759.)

With respect to the check box MSE forms, each party relies upon *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468 (6th Cir. 2016). (ECF No. 16, PageID.759-760; ECF No. 18, PageID.790.) In *Hernandez*, the Sixth Circuit noted that, where "check-box analysis is not accompanied by any explanation[,]" it is "nearly impossible to analyze" whether "the objective medical evidence" is consistent with the "indicated limitations on her mental functioning." *Hernandez*, 644 F. App'x at 474. The Sixth Circuit acknowledged it had "previously declined to give significant weight to rudimentary indications that lack an accompanying explanation[,]" *Hernandez*, 644 F. App'x at 474, and additionally referenced *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The court then stated that, "[t]o the extent that [the] check-box analysis conflicts with [objective evidence in the record], the ALJ properly discounted the MSS." *Hernandez*, 644 F. App'x at 475.

Here, Plaintiff has the better argument. The ALJ's heavy reliance on such weak evidence as checkmark MSE forms is flawed. Indeed, an MSS that is in the "check-box format" is "an impotent addition to the record with little to no

15

persuasive value . . . ." *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017). The Commissioner contends "the ALJ was not precluded from relying on check box mental status examination forms . . . ." (ECF No. 18, PageID.789.) Yet, in defending this position, the Commissioner asserts: "courts have found check box opinion forms, where the provider fails to justify their restrictions with any supporting findings, do not add anything to the disability record." (ECF No. 18, PageID.789-790 (emphasis in original) (referencing *Hernandez*).)

It is inconsistent for the Commissioner to defend the ALJ's reliance on the forms from Dr. Jafferany's office if the Commissioner believes the forms do not add anything to the record. Also, in her reply, Plaintiff points out that, for the form Roznowski used "on about 6 occasions[,]" each "is identical and absolutely everything is checked as normal . . . [;]" yet, "Ms. Roznowski's actual notes from those same treatment dates . . . are completely inconsistent with the mental status form." (ECF No. 19, PageID.797-798.) Without opining on whether the forms are consistent with concurrent progress notes, the Court is persuaded by Plaintiff's suggestion that "the ALJ's reliance on the checklist forms instead of the actual notes" was problematic. (*Id.*, PageID.798-799.) Thus, remand is warranted here, too.

16

### 2.     Opinion evidence (20 C.F.R. § 404.1520c)

Plaintiff challenges the ALJ's finding that therapist Roznowski's August 3, 2021 "medical assessment of ability to do work-related activities – mental" form (ECF No. 6, PageID.606-608) was "persuasive in part." (*See* ECF No. 6, PageID.41.) Specifically, Plaintiff challenges the following statement:

> . . . the above marked cognitive and adaptive limitations are unsupported by the claimant's conservative treatment history, and they are inconsistent with the grossly normal mental status exam findings throughout the record. For the same reasons, the record does not support the purported need to accommodate excessive absenteeism, rest periods, or time off-task at work.

(ECF No. 6, PageID.41.) *See* 20 C.F.R. § 404.1520c(c)(1)("*Supportability*."), (2)("*Consistency*.").

Indeed, the Court observes that: (a) while the ALJ's review of the opinion evidence cites to the particular opinion under review, it does not provide citations in support of the reasoning (*see* ECF No. 6, PageID.41-42); and, (b) of the ten instances where the ALJ refers to "conservative treatment," (*see* ECF No. 6, PageID.37, 38, 41, 42), only one is accompanied by record citations: "The claimant's psychological symptoms were treated conservatively with outpatient psychotherapy and psychotropic medications . . . [,]" (ECF No. 6, PageID.41), citing Melissa Murtha, NP's July 23, 2018 notes (*id.*, PageID.323), Trisha Taylor, N.P.'s August 27, 2018 notes (*id.*, PageID.370), Gladys Kimeli, FNP0C's March 20, 2019 notes (*id.*, PageID.385), and therapist Roznowski's October 19, 2021

17

notes (*id.*, PageID.494), as well as the 52 pages of Exhibit 7F (*id.*, PageID.550-601).

Nonetheless, in light of the foregoing conclusions regarding the ALJ's treatment of MER that warrants remand – *i.e.*, the 28-record chain citation does not provide "'an accurate and logical bridge between the evidence and the result[,]'" *Gross v. Com'r of Social Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) (quoting *Pollaccia*, 2011 WL 281044, at *6), particularly since the checkmark MSE check forms on which the ALJ places such heavy reliance are "an impotent addition to the record with little to no persuasive value . . . ." *Jackson*, 2017 WL 4699721, at *7 − the Court need not expend further energy considering Plaintiff's arguments that the ALJ did not "explain[] why he did not adopt the additional restrictions regarding time off task[], absenteeism[,] or the ability to maintain focus over an eight hour work day." (ECF No. 16, PageID.747.) (*See also id.*, PageID.752-755 [Absenteeism], 755-758 [Time Off Task].) It is hoped that a new hearing and opinion on remand will likewise cure whatever deficiencies may exist in this regard as well.

    **F.    Conclusion**

In sum, Plaintiff has the burden of proof on her statement(s) of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the

18

Commissioner only at Step Five."). Plaintiff has shown legal error in ALJ Sloss's July 5, 2022 decision. Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 16), **DENY** Defendant's motion for summary judgment (ECF No. 18), and **REMAND** this matter to the Commissioner of Social Security for action consistent with this report, *inter alia*, for analysis of the medical evidence of record that provides "an accurate and logical bridge between the evidence and the result[,]" *Pollaccia*, 2011 WL 281044, at *6 and for a more in-depth consideration of actual treatment notes, in contrast to checkbox MSE forms, with respect to evidence of psychosis.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 20, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

20